Good morning, your honors. If it pleases the court, my name is Mike Gillette. I represent the appellant, Tom Paul. This case raises several different issues. With the time we have this morning, I intend to address two of those issues this morning, although I'd be happy to respond to any questions about any of the issues before the court. The two issues that I intend to address are the district court's failure to give Mr. Paul notice of issues that the court raised sua sponte when the court dismissed his claims on summary judgment. Well, it seems like the court relied, in most instances, on alternative rationales. And while it found some that you might be right are incorrect, it also based its decision on others that were correct. Isn't that right? And even if it didn't, the Court of Appeal, if it's a matter of law, can affirm based on the correct reasoning. Well, if the district court relied on alternate grounds, one of which may not have been correct. Your Honor, the first question in analyzing a issue that's been raised sua sponte on summary judgment is whether or not the party had noticed that the losing party had notice of that issue and an opportunity to present both facts and argument to respond to that issue. Perhaps, if it were determinative. But if it weren't, why would it matter? In this case, except for the First Amendment retaliation issue, the district court's decision was made on issues raised sua sponte for all the claims. It addressed the substantive due process on the taking. What it characterized as a takings claim, it also characterized and ruled on as a substantive due process claim. Even if it hadn't, this court, as a matter of law, could rule on it as a substantive due process claim. But the issue that the district court raised on addressing the substantive due process claims was a different issue than had been raised by the defendants below. In what way? The issue, in fact, as the district court recognized at excerpts of record 19, the district court said, in order to establish a constitutional violation based on substantive due process, plaintiff must show both a deprivation of his liberty. This is with respect to the second due process claim. And conscience-shocking behavior by the government. So there are two elements that are relevant to the substantive due process claim. The defendants will- I was actually talking about the first one. In the first one- Which was characterized as a takings claim, perhaps- Yes, Your Honor. And in that case, it would be the deprivation of his property interest in being able to utilize the conditional use permit. So for a substantive due process claim, the plaintiff must establish that there's been a constitutional deprivation, number one. And number two, that the actions of the government to deprive him of that interest were of a conscience-shocking nature. The defendants did not raise the culpability issue, did not raise the conscience-shocking behavior issue. They merely raised the question of whether or not a constitutional interest had been deprived. And in the case of the first claim, the defendants argued that Mr. Paul had not been deprived of a property interest because he did not have- they claimed he was in violation of the terms of his conditional use permit, and therefore did not have a right to utilize that conditional use permit. They had the right to revoke it. He presented evidence to show that he was, in fact, in compliance. And there was, on that point, there was a disputed issue of fact, which would render summary judgment on that basis improper. And the court did not grant summary judgment on that basis. The court went to an issue that had not been raised by the defendants. It went to the question of whether the government's actions were of a culpable nature such that it shocked the conscience. Mr. Paul was not on notice because the district court did not give him notice that this was an issue that would be decided. He did not have an opportunity to present evidence that would tend to show that the government's behavior was of a conscience-shocking nature. It's a little hard to think that you have conscious, shocking behavior when you're fighting over whether you can put a sign up or not. Your Honor, I believe that if one is addressing the merits of that question in a case such as this, the conscience-shocking behavior is judged by whether or not he was deprived of his rights with deliberate indifference to those rights. That's under the Tennyson case. Talks about a spectrum of behavior. You might have deliberate indifference, but to rise to shocking the conscience, it's a little bit hard to make that leap. The burden is a heavy burden. But Mr. Paul is at least entitled to an opportunity to attempt to meet that burden. And by not giving him notice that that issue was in play, the district court deprived him of the opportunity to present whatever evidence he may have had. The record has some evidence that the city council and the city officials acted with deliberate indifference to his rights. But we were never given an opportunity to flesh out that record and to present all of the evidence that we may have on that. Well, most of the time, the district court is dishing up an issue that nobody thought was an issue. And your client didn't think it was. I mean, he, in thinking about his case, could have thought about all these issues. He didn't think about this one, didn't think it was worthy. We certainly thought that this was an issue that we would need to address at trial. We also thought this was an issue that if raised on summary judgment, we would have to respond to it and present our evidence. But if we are required to address every issue that could be raised at trial on summary judgment merely because other issues are raised on summary judgment by the defendants, then we would have to plead and prove our entire case on summary judgment even if all elements are not challenged at that level. We certainly did view the issue as one that eventually needed to be decided. And we look forward to an opportunity to present our evidence to the trier of fact at trial. And we believe we would prevail at that point. Discovery was closed. The motion was made at the last moment before it had to be made. You have your 56F argument about maybe there were some more emails out there. But setting that aside, what would you argue now from the record? Was conscience shocking about the five foot difference in where his billboard could be placed? Well, I'll directly address that question. But in the context of recognizing that the record was a record that we built based upon the motion that had been presented to us by the defendants in which conscience shocking was not part of the argument. Well, it was the record you'd built to go to trial on because discovery was closed and the next thing would have been trial. So that was the record was the record. Well, the record before the trial court did not include everything that the record before the trial court was less complete than the record would have been at trial. OK, well, you can even throw in other things you would have discovered subsequently or found subsequently that would have shocked the conscience. Well, again, we believe the appropriate standard for deciding whether this was conscience shocking behavior is whether or not the government officials acted with deliberate indifference to Mr. Paul's rights. And acted in a way that would shock one's conscience. Correct. I mean, not all deliberate indifference  You can be deliberately indifferent to something that doesn't shock your conscience. In this case, looking at the particular issue that we've been talking about, that first substantive due process claim, the city took away that conditional use permit because Mr. Paul, or at least there's evidence that we did submit, they took away that conditional use permit because Mr. Paul was putting up handmade signs that criticized members of the city staff and the city. He was putting up signs on his property that said things, the record shows it, for example, that one of the signs said, fire the city attorney. And the reason he was doing this was because he felt he was being mistreated by the city with respect to their efforts to prevent him from putting up the billboard that he was seeking the conditional use permit for. The city's mayor, one of the defendants, sent an email when some of these signs went up, sent an email to the city manager, another defendant, saying, I think the words were, this is disgusting, I find this disgusting, let's give him a behavior adjustment message here, and then referred to a settlement agreement indicating that he wanted the conditional use permit revoked. The city manager responded that he was in agreement. He responded that they were going to file criminal charges against Mr. Paul. And then another city council member who was on this email, who was copying on the email, sent in his own views, which was, we're not going to take the high road on this one. Did they file criminal charges? They filed misdemeanor charges, yes, they did. And which were, after about a year or two, were ultimately dropped after Mr. Paul agreed to paint over with whitewash, paint over the signs that criticized the city. And the city attorney sent an email to the city council at that point, saying, we dropped the charges, they're no longer needed, because- Wasn't the problem with the signs that he had too much square footage, or what was allowed under the city's rules? That was what was alleged. They didn't actually make him take down the physical signs once they were painted over. At that point, they determined they were non-signs, as long as they didn't have a message on them. They determined that because the content was gone, that they were no longer signs. What was the content of the misdemeanor charge? What did they charge? They charged that he had signs that violated the municipal code's size and area restrictions, that there were too many signs and that they were too large. But that could be a criminal charge, or was it a civil? It was a criminal misdemeanor charge. Is there anything in the law of that city that would possibly support that? There was a municipal code- Which said what? Which had these size and area restrictions. That a violation was a criminal offense? That allowed it to be charged as a criminal misdemeanor offense, correct. They charged it that way, but was that in the statute? Yes. Yes, it is. Or it was. I don't know if it currently is or not. Our argument, and that we made before the court, was that this was mere pretext to wanting to get the content of the signs removed. And that's what the city attorney said in an email to the city council. We achieved the objectives of the citation because the content has been removed. He didn't say because there are no longer signs. He said because the content has been removed. Making it no longer a sign because it didn't have any content at all on it, right? It didn't have any content at all on it. But when you say he whitewashed the signs that the city didn't like, that implies that some of the signs weren't whitewashed. That's correct. What did those say? Burma shave? Well, they were commercial signs. They were not political signs. They were signs for Paul's Construction Company, I think a phone number. But they were not signs that conveyed a political message. Is that on the record? No, go ahead. I believe that that is in the record. Well, don't take a lot of time, Judge Bivey. It sounds to me like the city would make him actually physically take down these signs. I don't think that they had to deem them once they were whitewashed to be non-offensive. It sounds to me like that was sort of a compromise position was once you got the content down, then we're just not going to fuss with him any further. But it certainly seems to me that the city could have said as a time, place, manner restriction that, yeah, the signs have to come down whether they've got content on them or not. You can't have a blank billboard up if it's in violation of some zoning restriction on billboards. Yeah, and the billboard was not up at this point. I understand. The, in the case we have here, if the only thing that was at issue were the misdemeanor charges that had been brought against Mr. Paul, then I think there'd be a question as to whether or not the city truly was trying to enforce its size and area restrictions, and that was its objective, and the fact that these were politically oriented signs was a coincidence. But you have a history of where the city is trying to suppress the content of those signs. In agreeing to his allowing him to have the conditional use permit in the first place, he had to bring litigation in state court to accomplish that. There was a settlement. And as part of that settlement, the city brought in political signs, which he did. Then when, a few months later, when he started to construct the billboard, the city came up with this theory that this survey that had been done some 25 years earlier, not a short plat, not a dedication, but a survey, a privately conducted survey, that that somehow conveyed the right of way to the city. And now his billboard is constructed too close to the property line for the terms of the conditional use permit. You're of your time. I do have one question about the plat and the lines. Don't you have some procedure in Washington for resolving that in state court? This seems like this is a Washington property dispute, not a matter of constitutional law to decide where the right of way goes. We're not asking the court to decide where the right of way goes, and that is a state law question. All we're saying is that for the municipal government to pretend such severe ignorance of basic municipal law, in terms of what constitutes a dedication under state law, is evidence, we believe, that they had absolutely no concern for upholding his rights. They were simply trying to pressure him. How could we know the answer to that without knowing where the right of way runs? Well, we will have to know where the right of way runs, but that's a very simple. And that would be determined in federal court? The federal court would determine what Washington state law provides. I don't think that would be a complicated determination for the district court to make. Thank you, Your Honor. I apologize for going over my time. Thank you. Thank you. May it please the court, counsel, I'm Brian Christensen. I represent the defendants, City of Sunnyside, and the various named defendants. I think one thing I want to mention that was just to start that was just talked about, the charges against Mr. Paul came after months of asking him to please come in compliance with the sign law. They were taken away when he was told if he covered up enough of the signs to come in compliance, they'd drop the charges, which he did. And I don't believe it's in the record that he was told he had to cover up the ones with the bad messages. In fact, I believe it's in the record, some of those signs still stayed up. It was a matter of compliance, and in the materials is the exact- Can you tell us where in the record we might look to see what signs remained and what signs were covered? I believe in Supplemental Record 24 is discussed what was told Mr. Paul how to come in compliance. I had looked that up while you guys were talking. I don't remember everything in the record. But that was one area I saw where that was discussed. I don't believe there's any evidence anywhere that suggests that the content of these signs had to be covered up. Counsel used the word they had to cover up the content. That's because, as was pointed out, without content it's not a sign, whether it's commercial or political or anything. So what was the misdemeanor charge? A violation of the sign ordinance. I believe I spelled that out in my brief. I talk about what the citations to the ordinance and what the square footage was. And here's another point concerning that. He was actually charged twice, which was in the record. The first time he was charged after months of asking him, please, you've got to come in compliance and he wouldn't do it. First charge he was charged with was dismissed because the court found the complaint wasn't adequate. It didn't properly tell him what he was charged with. Which is the judge's decision. That's fine. After that, clearly on notice about the sign issue, he actually put up a bunch more signs. After he'd already been charged, he'd been warned, he put up more signs. And that is in the record. And then he was charged the second time as he was clearly in violation and knowingly in violation. And the city actually talked about what to do and decided they didn't have a choice. Concerning counsel's argument that he did not receive notice of issues. Now the touchstone he mentioned of that is that he didn't get an opportunity to respond. I would submit that although the takings claim was not raised in the summary judgment by the city, every other issue the court relied upon and talked about was in the summary judgment. The court was in your brief? In the brief. You raised the conscience shocking, the lack of conscience shocks. That was not specifically raised, but was raised was the fact that the action they took was not arbitrary, that it wasn't deliberately indifferent, and they had a basis for doing what they did. And so there really wasn't a point to mention shock to conscience if the evidence shows it was clearly a legitimate action. And so no, it wasn't raised. And if you read the court's decision, their decision is they relied upon exactly what was raised in the summary judgment brief. And to say we weren't able to bring in evidence of shock to conscience, well, they couldn't bring in evidence to show that it was arbitrary. There was really no point in getting to the shock to conscience argument in the first place. Concerning the second due process claim, where counsel makes the argument he didn't have an opportunity to respond, the court specifically says in its decision that they agree with the city's position. And then they talked about what the city's position was. Are you talking about the engineer review of the plan? Yes. Yeah, right in his decision, he says he agrees with the city's position. And then the court actually went further in discussing the elements. The element the city focused on in their brief was that there wasn't any evidence that there was this conspiracy or that they had treated him differently and all that. And the court agreed. And they talked about that. And so counsel was on notice that that was the issue, that there was no evidence of any mistreatment or any of that type of issue. And the court agreed and talked about all that. And so I would submit this isn't a case of counsel not receiving notice of in time to bring up facts. I would suggest there just weren't the facts to bring up. He was told that his case didn't have the evidence. I'm sorry. Just of the equal protection claim would have to be that he was prevented from practicing his profession in some way. I'm wondering if it was discussed how even if it were required of him and not of anyone else that particular plans for a particular house had to be approved by an engineer before they could be implemented, how that prevented him from practicing his profession. I don't know. Is that discussed or brought to court? It was discussed. What was really discussed was the city and in the materials it states the building department chief guy, chief guy, that sounds real great, department head and one of his employees went to a seminar right around the same time and learned that they had been approving plans wrongfully. And so they changed. And we have the certificates to show. And it was the exact time of Mr. Paul's application. And so they changed their stance a little bit. And that's what his complaint is. But the evidence is undisputed. It's not disputed, sorry, my mind is gone today, that they imposed the same requirement on the other people as well. That is disputed. He says that he was told he had to have an engineer review his plans and the other people were told they needed to change their plans and they chose to have an engineer review them, but they weren't told they had to have an engineer review them. So there is a slight difference in the facts. And on summary judgment, of course, we have to believe the plaintiff's facts. So assuming that he was told that he had to have an engineer review them and the others only did it voluntarily. Well, I would submit that the fact in that case is that they were both told. His stating that the other side didn't have to is basically him speculating because he doesn't have any evidence of that. And the city people all lay down the foundation of where they came with this decision that they had to have the plans changed. OK, one other issue that counsel mentioned, actually, if the court doesn't have any questions, I think we just talked about what counsel talked about. I believe this all started with the city trying to do a road project. Oh, I remember what it was. They found this survey that suggested that the right of way was wider than they previously thought. The engineers found it. They thought it was valid. They revoked Mr. Paul's use permit to put up his sign. And one of the things about that. What does the right of way actually mean? That the city is comparable to an easement? Or would it be comparable to an actual, dare I say, taking of somebody's property? Or what exactly is it? It actually, in various situations, can mean both. But in this case, clearly it was city property. This was not an easement. It wasn't just a right to be on their property. They had the property. In fact, the reason this came up is because as they're riding the roads, they're paying landowners for their property as they're going along. And they paid Mr. Paul, eventually, for his property here. But they find this survey. Mr. Paul is informed, don't put your signs up because we need to figure this out. He was given a stop work order. He was given a change order. And he disobeyed them. And really, the attitude at that time with the city was, we need to figure this out. And we're doing this project. We can't have you building signs and pouring concrete if this is our property. The conditional use permit was eventually revoked. And I think what's interesting about that, and it was kind of hinted at earlier, Mr. Paul was at that hearing. And he had an attorney. And his attorney didn't raise the same argument the council's raising, that this plat map wasn't properly certified and filed. Their argument there was basically that there was an issue of that the land now belonged, adverse possession is the word I'm looking for. When was Mr. Paul paid for his giving up any property rights? When? When, yeah. Well, it's really not in the record. But at some point after they got into this sort of dispute over the property. So is that a concession that the state didn't own it? Well, as they're going along and they, your honor. You told Judge Wilken that in this case that it meant that that was land owned by the city. I should back up a little bit. Judge Fletcher asked you whether they paid him for it. And you said, yes, that suggests that they didn't own it. I might be getting my instances mixed up. There was about three lawsuits brought in over time by Mr. Paul concerning land. I can't remember if this was specifically on that land. There were some other land issues as well. And there was one involving a ditch and some other things. Was he? So I may have misspoken with that. OK. Trying to remember. Anyway, there was process before they revoked this conditional use permit. They had a hearing. Mr. Paul had an attorney. The city council listened to arguments of both sides. And Mr. Paul had violated the terms by not obeying the city codes concerning the stop work order and the change order. And so they revoked it. Certainly nothing shocking to conscience. And certainly, I would say in the court, found nothing that was arbitrary. Well, maybe if it really was a taking of actual property rights, maybe it really is a takings claim after all. And needs to be exhausted in state court, which I gather perhaps it eventually was. It may well be, eventually. I don't know. We haven't, until the court raised that, that hadn't been talked about. Thank you. Mr. Gillette, I will afford you another minute to respond. Thank you, Your Honor. With regard to the takings issue, it's only a takings issue if we were alleging that we were denied just compensation for property that was taken. We're alleging that we were deprived of property rights through arbitrary and capricious and improper government. And the property right being your conditional use permit, not land. In the conditional use permit, correct. Not the right of way, which was eventually sold to the city as part of a settlement of litigation. Briefly, on the question of whether or not the other contractor was told that they did not need to engineer their plans, on page two, volume two of the experts record, page 105, we have a declaration of the city building official, Mr. Storms, in which he says, I advised AHO construction that their plans would have to change, and they elected to have an engineer draw the revisions. So he did not instruct them to have an engineer. They elected to have an engineer. Mr. Hall, who runs his own business, is not a big company,  that would have to go back and get plans re-engineered, pay for the engineer, time and time again, which is what he feared was happening. And therefore, he withdrew from that particular project. He sent an email to the city manager saying, he had told him in advance that he might need to do this. And he said, I'm withdrawing from this project, and I'm not going to be able to do business in Sunnyside any longer. And the city manager sent an email to another city employee, in fact, Mr. Storms, saying, let's hope he keeps his word. So we believe that's evidence. It may not be, there may be multiple interpretations one could take of that evidence, but it's evidence that they were trying to drive him out of business in Sunnyside, and they were pleased that it appeared to them, or at least the city manager was pleased that it appeared to him that they were succeeding in that effort. Thank you, Your Honor. Thank you, counsel. Paul versus city of Sunnyside is submitted.
judges: Wilken, Fletcher B. , Bybee